IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEWEL GARDNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 22-cv-4765 |
| v. | ) |
| | ) |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

CLASS ACTION COMPLAINT

Plaintiff, JEWEL GARDNER ("Gardner"), by her attorney, Kenneth Anspach, for her Complaint against Defendant, ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY ("Allstate"), alleges and avers as follows:

JURISDICTION AND VENUE

1. Gardner brings this action pursuant to Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), 42 U.S.C. § 3604(a) and (b) and state law.

2. This Court has jurisdiction over Gardner's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

3. Venue is proper pursuant to 28 U.S.C § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this district.

COUNT I

[Breach of Contract]

1. At all times pertinent hereto, Allstate was an insurance company authorized to do business, and doing business, in the State of Illinois.

2. On or about September 26, 2020 Allstate executed and delivered to Gardner a renewal insurance policy (the "Policy"). Because Gardner's only copy of the Policy burned in the fire described more fully hereinbelow, Gardner does not have a copy of the Policy. Gardner has demanded a copy of the Policy from Allstate, which has failed and refused to provide one.

3. Under the terms of the Policy, Allstate insured Gardner against loss or damage by fire to the dwelling (the "Dwelling") at the residence premises described in the Policy, *to wit*, 6604 South Marshfield Avenue, Chicago, Illinois 60636 (the "Residence Premises"), in the amount of $304,328.00, for a term of one year from September 26, 2020.

4. Gardner has had an ownership interest in the Residence Premises for a period of approximately 31 years, during the last 8 to 9 years of which she and the Residence Premises have been insured by Allstate. At the time of the fire described below, Gardner was 63 years old.

5. Under the terms of the Policy, Allstate insured Gardner against loss and damage by fire to personal property (the "Personal Property') in the approximate amount of $228,449.00 and for additional living expense ("Additional Living Expense") up to 24 months in the approximate amount of $60,920.00.

6. On September 6, 2021, while the Policy was in full force, the Dwelling and Personal Property on the Residence Premises, *i.e.,* the property covered by the Policy, were destroyed by fire (the "Fire").

7. The total loss sustained by Gardner as a result of this destruction was $274,851.11 to the Dwelling and approximately $228,449.00 to the Personal Property, constituting a total property loss in the amount of $503,300.11.

8. As a result of the Fire, Gardner incurred Additional Living Expense for what will be at least 24 months in the approximate amount $60,920.00. Of that amount Allstate paid for only 5 months and 22 days of Additional Living Expense in the approximate amount of $14,455.65, although Gardner was entitled under the Policy to 24 months of Additional Living Expense. Had Allstate fulfilled its contractual commitment under the Policy, Gardner would have received the benefit of Additional Living Expense in the total additional amount of $46,464.35. Gardner also sues for this deficiency.

9. Gardner has performed all conditions precedent under the Policy on her part to be performed.

10. No part of the $503,300.11, *i.e.,* the amount of insurance payable under the terms of the Policy in case of loss of Dwelling and Personal Property, has been paid to Gardner by Allstate. Also, no part of the $46,464.35 unpaid Additional Living Expense has been paid to Gardner by Allstate.

11. Allstate is liable to pay Gardner for loss of Dwelling, Personal Property and Additional Living Expense she sustained (the "Gardner Claim") as a result of the Fire in the amount of $549,764.46, plus interest at the statutory rate of 5% and costs.

WHEREFORE, Gardner demands judgment against Allstate in the amount of $549,764.46, plus interest at the rate of 5% annually and costs.

## COUNT II

[Violations of 215 ILCS 5/155]

1-11. Gardner repeats and realleges the allegations of paragraphs 1-11 of Count I of her Complaint as and for paragraphs 1-11 of Count II of her Complaint.

12. Although often requested to do so, Allstate has failed and refused, and still fails and refuses, to pay Gardner for loss of Dwelling, Personal Property and Additional Living Expense she sustained as a result of the Fire in the amount of $549,764.46, with interest thereon, at the rate of 5% annually from September 6, 2021.

13. 215 ILCS 5/154.6(h) provides, in pertinent part, as follows:

> Sec. 154.6. Acts constituting improper claims practice. Any of the following acts by a company, if committed without just cause and in violation of Section 154.5, constitutes an improper claims practice:
> ***
> (h) Refusing to pay claims without conducting a reasonable investigation based on all available information.

14. Allstate failed to conduct a reasonable investigation of the Fire based on all available information.

15. Pursuant to letter dated March 8, 2022 (the "Denial Letter"), Allstate denied Gardner's claim for fire loss and damage as set forth hereinabove arising out of the Fire.

16. Although often requested to do so, Allstate failed to promptly provide a reasonable and accurate explanation of the basis in the Policy or applicable law for its failure and refusal to pay the Gardner Claim contrary to the provisions of 215 ILCS 5/154(h).

17. Acts identified as improper claims practices under 215 ILCS 5/154.6 are illustrative of conduct by an insurer that may give rise to a remedy for vexatious or unreasonable conduct under 215 ILC 5/155.

18. 215 ILCS 5/155 provides as follows:

> **Sec. 155.** Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action

reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
    **(a)** 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
    **(b)** $ 60,000;
    **(c)** the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.
    **(2)** Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

19. Allstate's refusal to pay, as set forth above, is vexatious and unreasonable as proscribed by 215 ILCS 5/155.

20. Allstate is liable to pay Gardner the loss and damage she sustained as a result of the Fire in the amount of at least $549,764.46, with interest thereon at the statutory rate of 5%, plus $60,000.00, plus attorney's fees, and such other amounts as are allowed pursuant to 215 ILCS 5/155, and costs.

WHEREFORE, Gardner demands judgment against Allstate in the amount of $549,764.46, with interest thereon at the rate of 5%, plus $60,000.00, plus attorney's fees, and such other amounts as are allowed pursuant to 215 ILCS 5/155, and costs.

## COUNT III

[Libel]

1-11. Gardner repeats and realleges the allegations of paragraphs 1-11 of Count I of her Complaint as and for paragraphs 1-11 of Count III of her Complaint.

12. At the time of the commission by Allstate of the grievances mentioned below, and for a long time before then, Gardner was a person of good name, fame and reputation, was a

5

resident of Cook County, Illinois, and was deservedly held in high esteem by and among her acquaintances and the general public.

    13.    Pursuant to letter dated March 8, 2022 (the "Denial Letter") addressed to "Jewel Gardner, 6604 S. Marshfield Ave., Chicago IL 606363027" and "Harris Insurance Services, Inc., 7161 N. Cicero Ave., Ste. 207, Lincolnwood IL 607122131," Allstate denied Gardner's claim for fire loss and damage as set forth hereinabove arising out of the Fire. Specifically, Allstate stated in the Denial letter, *inter alia,* as follows:

> This denial of liability is predicated on the totality of the evidence and the Allstate Vehicle and Property Insurance Company's conclusion that no compensable losses occurred, that the subject fires were the result of your or another insured person's intentional conduct in either causing or facilitating the subject fires and the intentional destruction of the subject property, and that you have heretofore attempted to mislead and materially misrepresent to the Company the facts of the subject occurrences.

This statement in the Denial Letter that "the subject fires were the result of your or another insured person's intentional conduct in either causing or facilitating the subject fires and the intentional destruction of the subject property," and/or "that you have heretofore attempted to mislead and materially misrepresent to the Company the facts of the subject occurrences" (the "Statement") imputes Gardner had broken the criminal laws and was guilty of crimes of Arson pursuant to 720 ILCS 5/20-1(a)(2) and Insurance Fraud pursuant to 720 ILCS 5/17-10.5(a)(1) and was so understood by those individuals at Harris Insurance Services, Inc., reading said Statement.

6

14. At said time and place Allstate had previously communicated with the following individuals at Harris Insurance Services, Inc. regarding the Gardner Claim and had knowledge that they would read the Statement: Jason Harris and Vicki Fichter.

15. The Statement was, and is, wholly false.

16. As such the Statement is defamatory *per se.*

WHEREFORE, Gardner demands judgment against Allstate in the amount of $500,000.00, and punitive damages in the amount of $1,000,000.00 plus interest and costs.

## COUNT IV

[Placing Gardner in False Light]

1-16. Gardner repeats and realleges paragraphs 1-16 of Count III of her Complaint as paragraphs 1-16 of Count IV of her Complaint.

17. Allstate's actions in making the Statement caused Gardner to be placed before the public in a false light.

18. The false light in which Gardner was placed before the public by Allstate was highly outrageous and offensive to the reasonable person.

19. Allstate actions in making the Statement were done with actual malice.

WHEREFORE, Gardner demands judgment against Allstate in the amount of $500,000.00, and punitive damages in the amount of $1,000,000.00 plus interest and costs.

## COUNT V

[Violations of Fair Housing Act, 42 U.S.C. § 3604(a) and (b)]

1-11. Gardner repeats and realleges the allegations of paragraphs 1-11 of Count I of this Complaint as and for paragraphs 1-11 of Count V of her Complaint.

12. Allstate maintains data regarding loss experience on its homeowners insurance organized by ZIP Code.

13. The vast majority of ZIP Codes are heavily predominated by only one racial group.

14. Allstate maintains a Special Investigations Unit ("SIU"), the purported intention of which is to "fight" fraud.

15. Allstate maintains a policy of referring claims from majority African American ZIP Codes to the SIU for purported fraud as a pretext and subterfuge for the denial and underpayment of legitimate covered claims. Compared to claims from non-majority African American ZIP Codes, upon information and belief the claims from majority African American ZIP Codes to a statistically significant degree are more likely to be referred to the SIU for fraud and either underpaid or denied.

16. Allstate's policy of referring claims from majority African American ZIP Codes to the SIU for purported fraud as a pretext and subterfuge for the denial and underpayment of legitimate covered claims results in Allstate engaging in racial discrimination by treating insurance claims filed by African Americans unequally from those filed by whites due to the race of the claimant.

17. Representative of Allstate's racially discriminatory treatment of claims is Allstate's treatment of the Gardner Claim.

18. The Residence Premises is located in ZIP Code 60636. ZIP Code 60636 is 93.03% African American majority. Gardner is African American. Gardner appeared personally at the offices of Allstate's attorneys, Condon & Cook LLC, for her examination under oath. Allstate requested, and she supplied, a photocopy of her Illinois Drivers' License which bore her

photograph. The Gardner Claim was a legitimate claim covered under the terms of the Policy. Upon information and belief, the Gardner Claim was referred to the SIU. The Gardner Claim was denied, *inter alia,* on the basis of purported fraud, *to wit*: "misrepresent[ation] to the Company the facts of the subject occurrences."

19. Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), 42 U.S.C. §3604(a) and (b) provides, in pertinent part, as follows:

> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
>
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

20. 24 C.F.R. § 100.70, promulgated thereunder, provides, in pertinent part, as follows:

> \*\*\*
>
> (b) It shall be unlawful, because of race, color, religion, sex, handicap, familial status, or national origin, to engage in any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons.
>
> \*\*\*
>
> (d) Prohibited activities relating to dwellings under paragraph (b) of this section include, but are not limited to:
>
> \*\*\*
>
> (4) Refusing to provide…property or hazard insurance for dwellings or providing such…insurance differently because of

9

      race, color, religion, sex, handicap, familial status, or national origin.

21. Because of Gardner's race, Allstate refused to pay the Gardner Claim for which Gardner was entitled to be paid to cover loss and damage to the Residence Premises.

22. This loss and damage made the Residence Premises unlivable.

23. Allstate handled the Gardner Claim differently because of Gardner's race.

24. The failure of Allstate to pay the Gardner Claim in full and in a timely manner deprived Gardner of ownership of housing.

25. The different handling of the Gardner Claim and the failure of Allstate to pay the Gardner Claim in full and in a timely manner constituted the providing of property insurance "differently because of race."

WHEREFORE, Gardner demands judgment against Allstate as follows:

A. Judgment for actual damages under the Fair Housing Act, 42 U.S.C. § 3613(c)(1) in the amount of $549,764.46, with interest thereon at the rate of 5% plus interest and costs;

B. Judgment for punitive damages under the Fair Housing Act, 42 U.S.C. § 3613(c)(1) in the amount of $10,000,000.00 or such other sum as will deter future violations of the Fair Housing Act, 42 U.S.C. §3604(a) and (b);

C. A permanent injunction under 42 U.S.C. § 3613(c)(1) restraining Allstate from continuing to:

    i. Refer homeowners' insurance claims from majority African American ZIP Codes in the United States to the SIU for purported fraud as a pretext and subterfuge for the denial and underpayment of legitimate covered claims;

      ii.      Process homeowners' insurance claims from African American majority ZIP Codes in the United States through the SIU for purported fraud as a pretext and subterfuge for the denial and underpayment of legitimate covered claims;

      iii.      Deny legitimate homeowners' insurance claims from African American majority ZIP Codes in the United States for purported misrepresentation and fraud;

      iv.      Refuse and fail to pay, delay the payment of, and make inadequate payment of legitimate homeowners' insurance claims from African American majority ZIP Codes in the United States on pretextual grounds; and

      v.      Discriminate on the basis of race in the processing and payment of homeowners' insurance claims from African American majority ZIP Codes in the United States.

      D.      Awarding reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2);

      E.      Ordering such affirmative action as may be appropriate pursuant to 42 U.S.C. § 3613(c)(1), including the appointment of a receiver for Allstate to assist the Court in ensuring compliance with any order or orders the Court issues hereunder; and

      F.      For such other and further relief as the Court deems appropriate.

COUNT VI

[Class Action]

      1-25.      Gardner repeats and realleges the allegations of paragraphs 1-25 of Count V of her Complaint as and for her allegations of paragraphs 1-25 of Count VI of her Complaint.

      26.      Pursuant to Fed. R. Civ. P. 23 and 28 U.S.C. Sec. 1711 *et seq.* Gardner brings this action on her own behalf and on behalf of a Class of similarly-situated persons injured by

Allstate's racially discriminatory conduct in the handling of insurance claims. The Class is defined as:

> All African Americans in the United States who reside in majority African American ZIP Code areas and have submitted claims on policies of homeowners' insurance for property loss and damage to Allstate during the period 2018 until the time judgment is entered herein and whose claims have been sent to the Allstate Special Investigations Unit for purported misrepresentation or fraud and whose claims have been denied or underpaid.

27. Excluded from the Class is Allstate and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; government entities; and the Judge(s) to whom this case is assigned and any immediate family members thereof.

28. Certification of Gardner's claims for class-wide treatment is appropriate because Gardner can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

29. Numerosity – Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that individual joinder of all Class members is impracticable. The precise number of Class members and their addresses are unknown to Gardner, but are readily available from the records of Allstate.

30. Commonality and Predominance - Fed. R. Civ. P. 23(a)(2). This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

    a. Whether Allstate sent the claim of its insured to the SIU for purported misrepresentation or fraud;

  b. Whether Allstate denied the claim of its insured from a majority African American ZIP Code; or

  c. Whether Allstate underpaid the claim of its insured from a majority African American ZIP Code;

  31. Typical Claims - Fed. R. Civ. P. 23(a)(3). The Gardner Claim is typical of the Class. Gardner is African American. Gardner's claim with Allstate was denied and, upon information and belief, had been sent to the SIU. The Gardner Claim meets one or more of the following criteria:

  a. Allstate sent the claim of its insured from a majority African American ZIP Code to the SIU for purported misrepresentation or fraud;

  b. Allstate denied the claim of its insured from a majority African American ZIP Code; or

  c. Allstate underpaid the claim of its insured from a majority African American ZIP Code;

  32. Adequacy of representation - Fed. R. Civ. P. 23(a)(4). Gardner is an adequate Class representatives because her interests do not conflict with the interests of the other members of the Class she seeks to represent; she has retained counsel competent and experienced in complex insurance litigation; and Gardner intends to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Gardner and her counsel.

  33. Allstate has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive and/or corresponding compensatory relief with respect to the Class as a whole.

WHEREFORE, Gardner, on her own behalf and on behalf of the other members of the Class, request that the Court enter orders for relief and enter judgment against Allstate as follows:

    a.    An order certifying the proposed Class and appointing Gardner as Class Representative and her counsel as Class Counsel;

    b.    An order that Allstate be permanently enjoined from its racially discriminatory conduct as alleged herein;

    c.    A judgment awarding Gardner and the other Class members their actual damages in an amount according to proof for Allstate's unlawful conduct alleged herein, entitling Gardner and the other Class members to their actual damages;

    d.    A judgment awarding Gardner and the other Class members actual and compensatory damages under the Fair Housing Act, 42 U.S.C. U.S.C. § 3613(c)(1) as a result of Allstate's wrongful conduct as alleged herein;

    B.    A judgment awarding punitive damages under 42 U.S.C. U.S.C. § 3613(c)(1) in the amount of $1,000,000.000.00 or such other sum as will deter future violations of 42 U.S.C. U.S.C. § 3604(a) and (b);

    C.    A permanent injunction under 42 U.S.C. § 3613(c)(1) restraining Allstate from continuing to:

    i.    Refer homeowners' insurance claims from majority African American ZIP Codes in the United States to the SIU for purported fraud as a pretext and subterfuge for the denial and underpayment of legitimate covered claims;

      ii.      Process homeowners' insurance claims from African American majority ZIP Codes in the United States through the SIU for purported fraud as a pretext and subterfuge for the denial and underpayment of legitimate covered claims;

      iii.      Deny legitimate homeowners' insurance claims from African American majority ZIP Codes in the United States for purported misrepresentation and fraud;

      iv.      Refuse and fail to pay, delay the payment of, and make inadequate payment of legitimate homeowners' insurance claims from African American majority ZIP Codes in the United States on pretextual grounds; and

      D.      Awarding reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2);

      E.      Ordering such affirmative action as may be appropriate pursuant to 42 U.S.C. § 3613(c)(1), including the appointment of a receiver for Allstate to assist the Court in ensuring compliance with any order or orders the Court issues hereunder; and

      F.      For such other and further relief as the Court deems appropriate.

PLAINTIFF DEMANDS TRIAL BY JURY.

                                      Plaintiff,
                                      JEWEL GARDNER,

                              By: /s/ Kenneth Anspach
                                  her attorney

KENNETH ANSPACH, ESQ.
ANSPACH LAW OFFICE
111 West Washington Street
Suite 1625
Chicago, Illinois 60602
(312) 407-7888
ken@anspachlawoffice.com