UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Jewel Gardner,

    *Plaintiff,*

v.

Allstate Vehicle and Property Insurance
Company,

    *Defendant.*

No. 22 CV 4765

Judge Lindsay C. Jenkins

ORDER

Plaintiff Jewel Gardner ("Plaintiff" or "Gardner") brings suit against Defendant Allstate Vehicle and Property Insurance Company ("Defendant" or "Allstate") for alleged violations of the Fair Housing Act, 42 U.S.C. § 3604(a) and (b), ("FHA") and Illinois state law arising out of Defendant's denial of Gardner's claim under a homeowners insurance policy following a fire in Gardner's home. Gardner also seeks to bring the FHA claim on behalf of a class of similarly situated individuals. Currently before the Court are Defendant's motion to dismiss the complaint for failure to state a claim [Dkt. 16] and motion to strike the complaint's class allegations [Dkt. 18].

For the reasons explained, the motion to dismiss is granted and the Complaint is dismissed in its entirety. As currently pled, the Complaint fails to plausibly allege an FHA claim based on either a disparate treatment or disparate impact theory of liability. The Court declines to exercise supplemental jurisdiction over Gardner's state law claims unless and until she can plead a viable federal claim (or other basis for the Court to exercise jurisdiction over the state law claims). See *Walker v. McArdle*, 861 Fed. Appx. 680, 687 (7th Cir. 2021) ("we presume that a district court will relinquish jurisdiction over supplemental state-law claims when no federal claims remain in advance of a trial.") The motion to strike is terminated as moot.

## I. Background

Gardner is an African American woman who lived in her home in Chicago for thirty-one years before it was severely damaged in a fire in September 2021. At the time of the fire, Gardner had been an Allstate homeowners' insurance policyholder for eight or nine years. Gardner submitted a claim to Allstate for approximately

$550,000 in property losses and additional living expenses. [See Dkt. 1 at 3, ¶ 11.][1] Rather than pay the amount that Gardner alleges she is due under her policy, Allstate denied the claim based on allegedly false allegations that "the subject fires were the result of [Gardner's] or another insured person's intentional conduct in either causing or facilitating the subject fires and the intentional destruction of the subject property, and that [Gardner] attempted to mislead and materially misrepresent to [Allstate] the facts of the subject occurrences." [*Id.* at 6, ¶ 13 (quoting March 8, 2022 denial letter).]

Gardner filed this lawsuit on September 6, 2022, invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331.[2] She alleges that Allstate has (1) breached the governing insurance policy by denying her claim (Count I); (2) violated the Illinois Insurance Code, 215 ILCS 5/155, by failing to conduct a reasonable investigation or promptly provide an explanation for its refusal to pay (Count II); (3) committed libel by accusing Gardner of starting the fire intentionally (Count III); and (4) also placed Gardner in a false light (Count IV). In her sole federal claim (Count V), Gardner alleges that Allstate has violated the FHA. Gardner also seeks to represent a class of similarly situated individuals with FHA claims (Count VI).

In her FHA claim, Gardner alleges:

Allstate maintains data regarding loss experience on its homeowners insurance organized by ZIP Code. The vast majority of ZIP Codes are heavily predominated by only one racial group. Allstate maintains a Special Investigation Unit ("SIU"), the purported intention of which is to "fight" fraud. Allstate maintains a policy of referring claims from majority African American ZIP Codes to the SIU for purported fraud as a pretext and subterfuge for the denial and underpayment of legitimate covered claims. Compared to claims from non-majority African American ZIP Codes, upon information and belief the claims from majority African American ZIP Codes to a statistically significant degree

---

[1]     Gardner's complaint does not use sequentially numbered paragraphs. To avoid confusion, the Court's citation to the Complaint at Dkt. 1 includes the page number and the paragraph number.

[2]     [Dkt. 1 at 1, ¶ 2 (citing 28 U.S.C. §§ 1331).] Plaintiff also invokes the Court's jurisdiction under 28 U.S.C. § 1343(a)(3) "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." [Dkt. 1 at 1, ¶ 2 (citing 28 U.S.C. §§ 1331 and 1343(a)(3)).] Plaintiff does not explain the relevance of the latter provision and nothing in the complaint suggests that Allstate relied on state law (or a statute, or ordinance) to deprive Gardner of any rights she enjoys under Federal law. If Gardner were to plead a viable FHA claim, the Court would mostly likely have supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

are more likely to be referred to the SIU for fraud and either underpaid or denied.

[Dkt. 1 at 8, ¶¶ 12-15.] Plaintiff concludes that as a result of its policy, Allstate is "engaging in racial discrimination by treating insurance claims filed by African Americans unequally from those filed by white due to the race of the claimant." [*Id.*, at 8, ¶ 16.][3]

## II.   Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the pleadings. "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court reads the complaint and assesses its plausibility as a whole. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). It "accept[s] all well-pleaded facts as true and draw all reasonable inferences in plaintiff's favor." *Cochran*, 828 F.3d at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

## III.   Analysis

The FHA makes it unlawful to "refuse to sell or rent ..., or otherwise make unavailable or deny, a dwelling to any person because of race …," or "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race …." 42 U.S.C. § 3604 (a), (b). The governing complaint contains a single count for violation of the FHA. In her response to Allstate's motion to dismiss, however, Plaintiff makes clear that she is pursuing both disparate treatment and disparate impact theories of liability. [Dkt. 33 at 7-8.] In a disparate treatment claim, a "'plaintiff must establish that the defendant had a discriminatory intent or motive,'" whereas "a plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Texas Dep't of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524-25 (2015) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)); see also *Connectors Realty Group Corp. v. State Farm Fire & Casualty Co.*, 2019 WL 5064699, at *6 (N.D. Ill. Oct. 9, 2019) ("A showing of discriminatory intent sets forth a disparate treatment claim, and a showing of

---

[3]      Given the disposition of the motion to dismiss, the Court finds it unnecessary to discuss the details of Plaintiff's state law claim.

discriminatory effect sets forth a disparate impact claim."), *reconsideration granted in part on other grounds*, 2020 WL 13444239, at *1 (N.D. Ill. Aug. 14, 2020). "A disparate treatment approach assigns burdens of proof and persuasion to the plaintiff, while a disparate impact approach places them on the insurer." *N.A.A.C.P. v. American Family Mut. Ins. Co.*, 978 F.2d 287, 291 (7th Cir. 1992). Due to this difference, "[r]ecognition of disparate-impact liability under the FHA [can] play[] a role in uncovering discriminatory intent: It permits plaintiffs to counteract unconscious prejudices and disguised animus that escape easy classification as disparate treatment." *Inclusive Communities Project, Inc. v. Heartland Community Association, Inc.*, 399 F.Supp.3d 657, 669 (N.D. Tex. 2019).

The Court begins with the disparate impact claim. As a preliminary matter, Allstate questions whether this is a viable cause of action against an insurer. Allstate argues that "[n]either the Supreme Court nor the Seventh Circuit has ever held that insurers can be held liable under the FHA based on a disparate impact theory," and maintains that in *American Family*, "the Seventh Circuit expressly declined to recognize the viability of a disparate impact theory, observing that 'the nature of insurance' does not lend itself to" that theory. [Dkt. 37 at 6-7.] But, as Gardner points out [Dkt. 33 at 7-8], the Seventh Circuit stated in *American Family* that the plaintiffs could prevail on a disparate impact claim against an insurer "if they establish that the insurer has drawn lines according to race rather than actuarial calculations." 978 F.2d at 291. Further, *American Family* was decided twenty years before *Inclusive Communities Project*, in which the Supreme Court concluded broadly that "[r]ecognition of disparate-impact claims is consistent with the FHA's central purpose": "to eradicate the discriminatory practices within a sector of the nation's economy." 576 U.S. at 539. The Court found that such "unlawful practices include zoning laws and other housing restrictions that function unfairly to exclude minorities from certain neighborhoods without any sufficient justification," *id.*, but did not limit its ruling to that specific context.

Other federal courts have found disparate impact claims against insurers cognizable under the FHA. See *Ojo v. Farmers Group, Inc.*, 600 F.3d 1205, 1208 (9th Cir. 2010) (FHA prohibits racial discrimination in both the denial and pricing of homeowner's insurance); *National Fair Housing Alliance v. Travelers Indemnity Co.*, 261 F. Supp. 3d 20, 30 (D.D.C. 2017); *National Fair Housing Alliance, Inc. v. Prudential Ins. Co. of America*, 208 F. Supp. 2d 46, 60 (D.D.C. 2002). These courts recognize that "insurance policies can create exactly the type of 'artificial, arbitrary, and unnecessary barriers' to housing that disparate-impact liability is suited to address." *National Fair Housing Alliance*, 261 F. Supp. 3d at 30 (advocacy organization stated FHA disparate impact claim against insurers providing habitational insurance by alleging that insurers refused to provide insurance to landlords who rented to recipients of federal housing assistance, that policy exacerbated racial and sex-based disparities by having a disproportionate impact on African–American residents and members of women-headed households in District

of Columbia, and that recipients were significantly more likely to be members of a protected class than was true for District of Columbia population as a whole). Further, Allstate "cannot point to anything in the FHA itself that would justify this Court in carving out an exception for a particular type of organization" like insurance. *National Fair Housing Alliance*, 208 F. Supp. 2d at 60. Allstate's argument essentially "turns on the purportedly unique nature of the insurance industry, which must 'discriminate' based on an assessment of risk." *Id.* This might support a "business justification" defense to a disparate impact claim, but it does not insulate insurers from suit under the FHA. *Id.*; see also *National Fair Housing Alliance*, 261 F. Supp. 3d at 30.

Next, the Court addresses the sufficiency of Gardner's allegations in support of her disparate impact claim. A plaintiff states an FHA disparate impact claim by alleging (1) a statistical disparity and (2) that the defendant maintained a specific policy which (3) caused the disparity. *Cty. of Cook v. Wells Fargo & Co.*, 314 F. Supp. 3d 975, 990 (N.D. Ill. 2018) (citing *Inclusive Communities*, 576 U.S. at 541-42); see also *Nat'l Fair Hous. Alliance v. Deutsche Bank*, 2018 WL 6045216, at *11 (N.D. Ill. Nov. 19, 2018). The Supreme Court explained in *Inclusive Communities* that a "robust causality requirement ensures that racial imbalance does not, without more, establish a *prima facie* case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create." 576 U.S. at 521. "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection" between the identified disparity and the complained-of policy cannot make out a *prima facie* case. *Id.* at 543.

Gardner's disparate impact claim does not satisfy Rule 8 or *Inclusive Communities*. It is so threadbare and conclusory that it fails to plausibly allege either a statistical disparity or a particular policy causing that disparity. See *Wells Fargo*, 314 F. Supp. 3d at 990-91. The complaint alleges (and Gardner repeatedly asserts in response to Allstate's motion to dismiss) that "Allstate maintains a policy of referring claims from majority African American ZIP Codes to the SIU for purported fraud as a pretext and subterfuge for the denial and underpayment of legitimate covered claims." [Dkt. 1, ¶ 15.] But Gardner does not allege any facts suggesting that she means this literally—*i.e.*, that it is Allstate's express policy to determine which counties are majority African-American, and then refer claims from those ZIP Codes to SIU at some predetermined, higher rate than other ZIP Codes. Rather, in the next sentence of the complaint Gardner alleges "upon information and belief" that, "[c]ompared to claims from non-majority African American ZIP Codes, … the claims from majority African American ZIP Codes to a statistically significant degree are more likely to be referred to the SIU for fraud and either underpaid or denied." [*Id.*] This allegation suggests that the basis for Gardner's belief that Allstate must have a "policy" is the purported statistical disparity itself. But the Complaint offers no factual allegations supporting any statistical disparity in either the rate at which claims from certain ZIP codes are referred to SIU or the alleged statistical disparity

in the denial or underpayment of those claims versus claims made by policy holders in different ZIP codes. The Court finds this is insufficient to satisfy *Twombley* or *Iqbal*. See *Connectors Realty*, 2019 WL 5064699, at \*7 (plaintiff failed to state FHA disparate impact claim against insurer based on alleged State Farm policy of treating "claims from majority-black ZIP Codes on the South and West Sides of Chicago" as "presumptively fraudulent," where only statistics alleged by plaintiff—that "the odds that a property insurance claim remains outstanding and unpaid at the end of the calendar year in a ZIP Code with a 75% black population is 23% higher than a claim made in a ZIP Code with a 25% black population with comparable median incomes"— concerned the insurance industry as a whole and not State Farm specifically).

Gardner argues that she is allowed to plead on "information and belief" that a statistical disparity exists and that no additional detail is necessary because "[t]he relevant information and documents in this case, *e.g.* Allstate's internal policies and its bases for denying Gardner's claims, are almost exclusively in Allstate's knowledge or control." [Dkt. 33 at 7.] Assuming this is true, Gardner "surely possesses information of some kind that triggered [her] suspicion" of a statistical disparity, and "[s]uch information would not be within [Allstate's] exclusive possession." *Heard v. Becton, Dickinson & Co.*, 440 F.Supp.3d 960, 969 (N.D. Ill. 2020). But Gardner offers only "speculation, bald assertions, and unsupported conclusory statements" that there is a statistical disparity, which is insufficient to withstand a Rule 12(b)(6) challenge, *Taha v. International Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020), or "unlock the doors to discovery." *Affordable Business Interiors, Inc. v. Pomeroy IT Solutions Sales Co., Inc.*, 336 F.R.D. 162, 163 (N.D. Ill. 2020) (quoting *Iqbal*, 556 U.S. at 678-79). Gardner also suggests in her response to Allstate's motion to dismiss that Allstate has engaged in "redlining," which traditionally means "charging higher rates or declining to write insurance for people who live in particular areas (figuratively, sometimes literally, enclosed with red lines on a map)." *American Family*, 978 F.2d at 290. Regardless of the label, Gardner never begins to explain how the policy operated and resulted in any statistical disparities. For these reasons, the Court concludes that Gardner fails to state a plausible FHA claim for disparate impact. The Court will, however, grant Plaintiff's request for leave to amend her complaint, to the extent she believes she can do so consistent with this Court's order and Rule 11. [See Dkt. 33 at 14.]

That next question is whether Gardner has plausibly alleged an FHA claim for disparate treatment. The Seventh Circuit has observed that it "does not take much to allege discrimination" in an FHA case. *Wigginton v. Bank of Am. Corp.*, 770 F.3d 521, 522 (7th Cir. 2014). "To state a disparate treatment claim under the FHA, Plaintiffs must plausibly allege that Defendants had a discriminatory intent or motive." *National Fair Housing Alliance*, 2019 WL 5963633, at \*17–18. This "requires allegations 'of intentional discrimination, provable via either direct or circumstantial evidence.'" *Id.* (quoting *Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 314 F. Supp. 3d

950, 961 (N.D. Ill. 2018)). "While statistics alone may prove intent 'in some cases,'" in other cases "statistics combined with other evidence may be sufficiently probative of discriminatory intent." *Id.* (quoting *E.E.O.C. v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 876 (7th Cir. 1994), *Anderson v. Cornejo*, 284 F. Supp. 2d 1008, 1038 (N.D. Ill. 2003)).

Although Gardner's allegations need only be plausible at the pleading stage, her allegations are so sparse and conclusory that there is no factual basis from which "to infer discriminatory intent" for Allstate's denial of her claim. *Connectors Realty*, 2019 WL 5064699, at *6. Gardner alleges on "information and belief" that there is a statistical disparity between how often claims are referred to SIU for fraud in majority-Black neighborhoods compared to other neighborhoods. But this allegation, standing alone, does not plausibly suggest that Allstate referred Gardner's claim to SIU *because* she is African American. She alludes to no other support for her inference of discriminatory intent. She also has not identified any cases in which such sparse allegations have been found sufficient to state an FHA claim for disparate treatment. The cases on which she relies [see Dkt. 33 at 6] contained much more robust allegations. See *HSBC N. Am. Holdings*, 314 F. Supp. 3d at 966 (plaintiff county stated an FHA disparate treatment claim against mortgage lender where it "identified specific practices by which HSBC intentionally targeted, marketed, originated, serviced, and foreclosed on predatory subprime loans provided to minority borrowers, on terms different from loans provided to similarly situated non-minority borrowers"); *City of Los Angeles v. Bank of America Corp.*, 2014 WL 2770083, at *11 (C.D. Cal. June 12, 2014) (plaintiff stated FHA disparate treatment claim against lenders where "the Complaint include[d] factual allegations that Defendants targeted African–American and Latino borrowers for unfair loan terms on the basis of their race" and "provide[d] numerous allegations from confidential witnesses, including allegations that Defendants pressured loan salespeople to target minority groups and superiors told salespeople to target minorities"); see also, *e.g.*, *National Fair Housing Alliance*, 2019 WL 5963633, at *18 (complaint, read as a whole, "identifie[d] policies and practices by which Defendants intentionally favored REO properties in white neighborhoods for exterior maintenance," including statistics and use of racially charged code words like "hot zone" and "low value area" to distinguish between minority and white neighborhoods).

Gardner argues that this case is "nearly identical" to *Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427, 442 (S.D.N.Y. 2002), where the court found that the plaintiffs stated an FHA claim for discriminatory treatment where they alleged "that, because of their race, State Farm refused to pay insurance claims for which the plaintiffs were entitled to be paid and/or offered the plaintiffs inadequate proceeds to

7

cover a number of damages, including most prominently fire damages, to their home." But that case was "decided prior to the Supreme Court's decisions in *Twombly* and *Iqbal* which clarified the pleading requirements," and was distinguished on that basis in *Connectors Realty Group*, 2019 WL 5064699, at *7. The reasoning in *Connectors Realty Group* is persuasive: it illustrates the difference between sufficiently and insufficiently pled disparate treatment claims. In that case, one plaintiff (Beavers) sufficiently alleged the existence of racial animus by pointing to a conversation in which a State Farm employee used terms and language about neighborhoods on the South Side of Chicago. *Id.* at *6. By contrast, another Plaintiff (Nash) failed to state an FHA claim for disparate treatment because he did "not plead any facts to support the existence of racial animus on behalf of State Farm" or "connect any such animus to his treatment." *Id.* As currently pled, Gardner's FHA claim is like Nash's, not Beaver's. The Court therefore concludes that Gardner has not plausibly alleged an FHA disparate treatment claim. She is granted leave to amend that claim, along with her disparate impact claim.

## IV.    Conclusion

For these reasons, Defendant's motion to dismiss [Dkt. 16] is granted and its motion to strike class allegations [Dkt. 18] is denied as moot.

Enter:        22-4765
Date:         September 13, 2023

Lindsay C. Jenkins
United States District Court Judge